**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

RYAN D.,

                **Plaintiff,**

v.

                20-CV-519

**COMMISSIONER OF SOCIAL SECURITY,**

                **Defendant.**

## DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct any and all further proceedings in this case, including entry of final judgment. Dkt. No. 15. Ryan D. ("Plaintiff"), who is represented by counsel, brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for benefits. This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. Nos. 10, 11. For the following reasons, Plaintiff's motion (Dkt. No. 10) is granted, and the Commissioner's motion (Dkt. No. 11) is denied.

## BACKGROUND

On March 23, 2017, Plaintiff filed for Disability Insurance Benefits ("DIB") and Social Security Income ("SSI") alleging disability beginning on March 1, 2015, due

primarily to bipolar disorder and depression.  Tr. at 124-136, 152.[1]  Plaintiff's claim was denied at the initial level and he requested review.  Tr. at 81-88.  Administrative Law Judge Dale Black-Pennington ("the ALJ") conducted a hearing on November 20, 2018, at which Plaintiff, who declined representation by counsel, testified.  Tr. at 24-49.  Following the hearing, a vocational expert ("VE") provided responses to interrogatories.  Tr. at 232-36.  On March 26, 2019, the ALJ issued a decision in which he found that Plaintiff was not under a disability as defined by the Act from March 1, 2015, through the date of his decision, and therefore, was not entitled to benefits.  Tr. at 8-23.  The Appeals Council denied Plaintiff's request for review making the ALJ's decision final.  Tr. at 1-5.  Plaintiff commenced the current action on April 9, 2020.  Dkt. No. 1.

## LEGAL STANDARD

**Disability Determination**

A person making a claim for Social Security benefits bears the ultimate burden of proving disability throughout the period for which benefits are sought.  *See* 20 C.F.R. § 416.912(a); *Schauer v. Schweiker*, 675 F.2d 55, 59 (2d Cir. 1982).  The claimant is disabled only if he shows that he is unable to engage in any substantial gainful activity due to any medically determinable physical or mental impairment which has lasted, or can be expected to last, for a continuous period of at least 12 months.  42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.909; *see Barnhart v. Walton*, 535 U.S. 212, 216-22 (2002).

---

[1] Citations to "Tr. __" refer to the pages of the administrative transcript, which appears at Docket No. 8.

A disabling physical or mental impairment is an impairment that results from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D). Congress places the burden upon the claimant to establish disability by requiring him to "furnish such medical and other evidence of the existence [of disability] as the Commissioner of Social Security may require." 42 U.S.C. § 1382c(a)(3)(H)(i). The function of deciding whether a person is under a disability within the meaning of the Act belongs to the Commissioner. 20 C.F.R. § 416.927(e)(1); *Pena v. Chater*, 968 F. Supp. 930, 937 (S.D.N.Y. 1997).

The Commissioner has established a five-step sequential evaluation for adjudicating disability claims set forth at 20 C.F.R. § 416.920. The claimant has the burden at the first four steps. The Commissioner has the burden at the fifth step of demonstrating that the claimant can perform other work existing in significant numbers in the national economy, but the burden of proving disability is always on the claimant. *See* 20 C.F.R. § 416.920; *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (stating that "[t]he claimant bears the ultimate burden of proving [disability] throughout the period for which benefits are sought") (citation omitted).

**District Court Review**

42 U.S.C. § 405(g) authorizes a district court "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a

rehearing." 42 U.S.C. § 405(g) (2007). Section 405(g) limits the scope of the Court's review to two inquiries: whether the Commissioner's conclusions were based upon an erroneous legal standard, and whether the Commissioner's findings were supported by substantial evidence in the record as a whole. *See Green-Younger v. Barnhart*, 335 F.3d 99, 105-106 (2d Cir. 2003). Substantial evidence is "more than a mere scintilla." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (emphasis added and citation omitted). The substantial evidence standard of review is a very deferential standard, even more so than the "clearly erroneous" standard. *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 447-48 (2d Cir. 2012) (citing *Dickinson v. Zurko*, 527 U.S. 150, 153 (1999)).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). If there is substantial evidence for the ALJ's determination, the decision must be upheld, even if there is also substantial evidence for the plaintiff's position. *See Perez v. Chater*, 77 F.3d 41, 46-47 (2d Cir. 1996); *Conlin ex rel. N.T.C.B. v. Colvin*, 111 F. Supp. 3d 376, 384 (W.D.N.Y. 2015). Likewise, where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

**DISCUSSION AND ANALYSIS**

**The ALJ's Decision**

The ALJ analyzed Plaintiff's claims using the familiar five-step process. *Lynch v. Astrue*, No. 07-CV-249-JTC, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps).  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 1, 2015, the alleged onset date.  Tr. at 14.  The ALJ concluded at step two that Plaintiff's bipolar disorder, depression, and polysubstance abuse (in remission) were severe impairments.  Tr. at 14.  At step three, he concluded that Plaintiff did not have an impairment or combination of impairments which met or equaled the Listings.  Tr. at 14-15.

The ALJ found that Plaintiff retained the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations:  he is able to perform simple, routine tasks; he is not able to understand, remember or apply complex instructions and directions; he is able to have occasional interaction with co-workers and the general public; he is able to have frequent, but not continuous, interactions with supervisors; he is able to occasionally manage change to the workplace environment or work tasks; and he is able to frequently, but not continuously, work at production pace. Dkt. No. 15.

The ALJ found that Plaintiff had no past relevant work.  Tr. at 18. Relying on the VE's interrogatory answers, the ALJ found at step five that Plaintiff could perform work existing in significant numbers in the national economy, including work as

a cart attendant, salvage laborer, and trash collector.  Tr. at 18-19.  Accordingly, the ALJ determined that Plaintiff had not been under a disability since March 1, 2015, his alleged onset date.  Tr. at 19.

**Judgment on the Pleadings**

As noted above, the parties have cross-moved for judgment on the pleadings.  Dkt. Nos. 10, 11.  Among other things, Plaintiff argues that the ALJ failed to properly develop the record relating to his bipolar disorder and depression.  Specifically, Plaintiff contends that the ALJ should have obtained a medical source statement from a treating psychiatrist rather than relying on a consultative examiner and non-examining consultant, and acquired records relating to Plaintiff's court-ordered counseling, which he attended twice weekly for up to 7 hours at a time.  Given the apparent severity of Plaintiff's mental issues, this Court agrees that it was erroneous for the ALJ to make a disability determination without the benefit of these records.

From the outset, this Court notes that Plaintiff's history reflects severely maladaptive behaviors resulting from his untreated bipolar disorder.  Tr. at 419, 421-22.  As the ALJ himself noted in his decision:

> [T]reatment records confirm that claimant has been hospitalized for severe mental health symptoms on several occasions, each time due to medication noncompliance and that in May 2016, claimant was arrested for stabbing his grandfather, was determined to be mentally incompetent to stand trial and in August 2016, was placed in a psychiatric facility for several months (Exhibit B1F at 2; Exhibit B2F at 28; Exhibit B3F at 67-, 13-17, Exhibit B4F at 19).
>
> Treatment records further confirm that until claimant is properly stabilized with medication, his mental health symptoms remain severe.  For

6

> example, when not taking his medication, "claimant has had multiple suicide attempts, which included hanging attempts, blunt trauma to his head, and trying to run in front of traffic" (Exhibit B3F at 7). In addition, without his medication, claimant is prone to impulsive and antisocial behavior, often prompted by auditory hallucinations. As a result, he has reported getting into multiple physical altercations, including a stabbing injury to his upper torso, with some of these altercations leading to him being arrested" (Exhibit B3F at 7).

Tr. at 16.

Indeed, the record confirms that Plaintiff attempted to kill himself on numerous occasions, including in 2009 by overdosing on painkillers and in 2012 by strangling himself with tape. Tr. at 72. He was incarcerated several times – for breaking his mother's door down in 2014, counterfeiting money sometime thereafter, and stabbing his grandfather in 2016. Tr. at 39, 262, 355. He was forcibly medicated in 2016 after being determined incompetent to stand trial for the assault on his grandfather and refusing voluntary treatment. Tr. at 335-36, 342, 349. Upon his March 2017 release from a nine-month jail term for the assault, Plaintiff began counseling at Abbott PROS BestSelf. Tr. at 356. Plaintiff testified that he attended group therapy twice weekly at BestSelf for "about six, seven hours . . . each day" with a counselor named Rich, and saw a psychiatrist, Dr. Szymaski, at "Best ProHealth on Abbott." Tr. at 29, 40-41. Dr. Stephen P. Scriavani, Plaintiff's treating physician, prescribed and managed Plaintiff's medications, including the mood stabilizer Lamitrogine and the antipsychotic Risperidone, since Plaintiff's 2017 release from prison. Tr. at 221, 414-16, 435-40.

Even after he was put on medication, Plaintiff reported symptoms of mania triggered by "life situations going on." Tr. at 419. "I pace a lot," he reported to consultative examiner Dr. Gregory Fabiano in May of 2017. Tr. at 419. "I talk and say stuff that doesn't make sense. I give myself all of these goals that are impossible. I have increased anger. . . . I have a really depressed life [and] I'm feeling like I can't achieve anything," he told Dr. Fabiano. Tr. at 418-19. At his November 2018 hearing, Plaintiff testified that he had ups and downs, that he heard voices at times, and that he became delusional when he was "overwhelmed with added depression." Tr. at 42.

Notwithstanding these very serious mental health problems, the ALJ found that Plaintiff was not disabled when he was compliant with medication. This was predicated on two opinions: that of Dr. Fabiano, who examined Plaintiff only once, and that of T. Bruni who reviewed Plaintiff's records but never examined him. Dr. Fabiano found that Plaintiff had moderate limitations in, among other things, interacting with supervisors, coworkers, and the public and in regulating his emotions and controlling his behavior and had a fair prognosis if he initiated more intensive interventions. Tr. at 421-22. T. Bruni offered a similar opinion. Tr. at 69-73.

The ALJ never solicited a medical source statement from Dr. Scrivani, the physician who managed Plaintiff's medication, and he did not request Plaintiff's records from BestSelf. Tr. at 40-41, 221, 414-16, 435-40. The ALJ did send a records request to Chad Szymanski, DO, of Primary Care of Western New York, LLP. This practitioner

was apparently not the Dr. Szymaski at "Best ProHealth on Abbott" about whom Plaintiff testified, as the DO had no record of Plaintiff.  Tr, at 29, 445-48.

This Court finds that under the circumstances of this case, the ALJ's failure to develop the record relating to Plaintiff's mental functioning and his medication management or to solicit an opinion from a practitioner who saw Plaintiff on more than one occasion constitutes reversible error.  Plaintiff was proceeding *pro se* at the administrative level and, by all accounts, suffers serious mental issues that are difficult to treat.  While the duty to develop the record exists under any circumstances, it is strongest when the claimant is unrepresented.  *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990).  The duty to develop the record "goes hand in hand" with the treating physician rule, and for a *pro se* plaintiff, the ALJ is compelled to obtain from the treating source expert opinions as to the nature and severity of the disability.  *Leutung v. Comm'r of Soc. Sec.*, 2019 WL 1385847 at *4 (W.D.N.Y. 2019).  This includes not only medical findings, but also an "informed opinion as to the physical status of a patient."  *Dennis v. Colvin*, 195 F.Supp.3d 469, 474 (W.D.N.Y. 2016).

Relatedly, an ALJ cannot render a commonsense judgment about a claimant's functional capacity based on bare medical findings where the claimant suffers from a complex medical condition.  *Perkins v. Berryhill*, 2018 WL 3372964 at *4 (W.D.N.Y. 2018).  Defendant argues that the ALJ had enough information to make an informed decision, and that based on the existing evidence, neither the counseling records nor a treating source opinion were likely to affect the finding that Plaintiff was

not disabled.  Dkt. No. 11-1, pp. 5-14.  This argument is highly conjectural given the unpredictable nature of Plaintiff's mental health problems, and therefore, this Court rejects it.  "[W]hile it is true that the ALJ does not need to develop the record further unless the record contains obvious gaps, the courts of this Circuit have repeatedly held that an ALJ has a heightened duty to develop the record when a claimant is alleging mental illness."  *Stack v. Comm'r of Soc. Sec.*, 2020 WL 5651601 at *3 (W.D.N.Y. 2020) (citing *Freeman v. Comm'r of Soc. Sec.*, 20020 WL 381087 at *3 (W.D.N.Y. 2020)).

The fact that the ALJ tried but failed to get records from Dr. Szymanski does not remedy the deficit in the record.  Where an ALJ sends a records request to the wrong address, they have failed to develop the record.  *Jones v. Berryhill*, No. 16-CV-6042 CJS, 2017 WL 2222245, at *6 (W.D.N.Y. May 22, 2017).  This is true even if the ALJ is unaware that the request was sent to the wrong place or to the wrong practitioner.  *Id.* at *6, n.8.

Accordingly, this case is remanded with instructions to solicit opinion or medical source statement from Plaintiff's treating physician, Dr. Scriavani, and obtain records from BestSelf, and if possible, from Dr. Szymaski at "Best ProHealth on Abbott." Because remand is warranted on this basis, this Court need not reach Plaintiff's remaining argument that the RFC conflicts with the opinions of Dr. Fabiano and T. Bruno, which the ALJ afforded significant weight.  The ALJ is free to address this issue in the manner he sees fit.

**CONCLUSION**

For the reasons stated herein, Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is hereby GRANTED, and the Commissioner's motion for judgment on the pleadings (Dkt. No. 11) is DENIED.  The Clerk of the Court is directed to close this case.

**SO ORDERED.**

DATED:   Buffalo, New York
         September 10, 2021

*s/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**